RECEIVED

MAY 2 4 2005

LARRY W. PROPES, CLERK
CHARLESTON, SC

United States District Court
District of South Carolina

| | | |
|---|---|---|
| Sam McCray, #284915; | ) | C/A No. 9:05-1453-CMC-GCK |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| Kirkland Correctional Institution; Warden Bernard McKie; | ) | |
| Kirkland Medical; Dr. Jomil; Nurse Deppe; Headquarters | ) | |
| S.C. Department of Corrections; and Director Ozmint; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, Sam McCray (hereafter, the "Plaintiff"), has brought this *pro se* action against the Defendants under Title 42 United States Code section 1983. Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff is incarcerated at the Kirkland Correctional Institution (KCI), under the South Carolina Department of Corrections (SCDC) in Columbia, South Carolina. His Complaint alleges the following:

> On or about 2/22/05 I started getting sick. My vision would get blurry and then clear, my mouth got very dry and I started drinking water excessively and urinating a lot. I started having weak spells and dizziness. Some days it would be worse than others but after a week or so it progressively got worse and I signed up for medical. At Kirkland when you sign up for medical it is usually 3 to 4 days before you receive [sic] a order [sic] to report to actually go to medical. I recieved [sic] my order to report to medical for 3/9/05. I went to medical and I explained to Dr. Jomil about my symptoms and how I was feeling I had also started to lose a good bit of weight by this time. He told me that there was nothing wrong with me. He said I was urinating a lot because I was drinking too

1

much water. He also told me to cure my dry mouth I needed to rinse my mouth with warm salt water. I asked him about my vision being blurry and he said that they would schedule me a appointment [sic] with the eye doctor. He then told me again that there was nothing wrong with me. Then he gave me a (7) seven day medical no work pass and sent me back to the dorm. After my pass expired on 3/16/05 I returned to work. If there was nothing wrong with me, why did he give me the no work pass. I was still having the same symptoms but I could not afford to lose my work credits so I returned to work. The symptoms kept getting worse and I kept signing up for sick call. A couple of days later they finally saw me and took some blood from me for testing. Approximately (2) two weeks later on 4/1/05 I recieved [sic] a mandatory order to report for 4/4/05, 4/5/05, and 4/6/05 for finger sticks. I had never had this done before. On Monday morning 4/4/05 I reported to medical. I was so weak when I got there that I sat in the first chair I came to. Mrs. Gallman at medical told me that I could not sit there. I told her that I was sick, had lost a lot of weight and was very weak, so she sent me right in to Mr. Deppe the nurse for my finger stick. I told him how I felt and that I needed some where to lay [sic] down. He stuck my finger and sent me to the holding cell where I collapsed on the floor. Mrs. Davis and Mrs. Gallman made me get up off of the floor and go sit outside and get some air. Nurse Deppe has still not said anything about my sugar level. All of this happened between 6:30 am and 7:30 am. Around 8:00 am they sent me back to the dorm. I spent the whole day in bed and ate nothing. Later that afternoon I got real bad and I tried to get help from the dorm officer, Sgt. Worley, and couldn't get any. I finally had to lay down [sic] on the floor in the dorm before they would call the first responders. They carried me on a stretcher to operations and sent me to the hospital. This was the same day 4/4/05 between 8:30 pm and 9:30 pm. I spent 14 days in the hospital and the staff at Palmetto Health Richland told me that when admitted my sugar level was 900 and there was no way that it went from normal to 900 in only 12 hours. They also did a MRI and found that I had blood clots on my lungs and legs that was probably caused by the diabetes I now found out I had. They put me on medication for the blood clots and insulin shots and got me stabilized. On 4/18/05 I was released from the hospital and taken to Kirkland infirmary where I spent another (3) three days before being released back on the yard on 4/11/05. This same day they sent me to pick up my medication from the pill line. Nurse Henderson stated to me that they never should have sent me back to the dorm on 4/4/05. After 20 days they sent me a order [sic] to report to get daily finger sticks. This whole time since being released to the yard they had me on the pill for my diabetes instead of insulin. I question them about it and they said I did not need to shots, only the pill. Mr. Williams [illegible] who did my finger stick had asked me about insulin because there was no record in their computer. He called the infirmary and found out that I was supposed to be on insulin. He said that information was supposed to have been sent to them on 4/22/05 and here it was 5/3/05 and he had to talk over there and get my records. This was 11 days they had failed to give me the medication that I was supposed to have been on, mainly the insulin shot. I believe that SCDC, Kirkland Correctional and Warden McKie in their policies for handling medical emergencies after medical hours were negligent in the amount of time it took for them to get me help. I believe that Kirkland medical, Dr. Jomil and Nurse Deppe were grossly and willfully negligent in the way they handled my

illness. I believe they knew within days of me giving blood that I was diabetic and I believe that Nurse Deppe knew within seconds after doing my finger stock that my blood sugar level was too high and they did nothing to help me and almost cost me my life. I believe SCDC, the Director and his staff is negligent in that they are over all the institutions and should be held responsible for the workers under them who they get paid to supervise. I feel they know of the inadequate medical at Kirkland and they do nothing about it. I is neither adequate or timely.

[1-1, pp. 3-5.]

### *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5 (1980); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519; Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F. 2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, supra. Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. Liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).



### MEDICAL TREATMENT UNDER 42 U.S.C. §1983

With respect to medical and health needs, a prisoner must show deliberate indifference to a serious need. Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1977). Cases under this heading cover diverse circumstances, ranging from suicide prevention and medical emergencies to provision of wheelchairs or crutches. Consistently, however, the test has

been one of deliberate indifference. Grayson v. Peed, 195 F. 3d 692 (4th Circ. 1999); Shakka v. Smith, 71 F. 3d 162 (4th Circ. 1995); Davis v. Hall, 992 F. 2d 151 (8th Circ. 1993); Hill v. Nicodemus, 979 F. 2d 987 (4th Circ. 1992); Gray v. Spillman, 925 F. 2d 90 (4th Circ.1991); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

At the thresh hold, a complaint of deliberate indifference must disclose an objective injury or inattention to serious medical need. Shakka v. Smith, supra; Strickler v. Waters, 989 F. 2d 1375 (1993). Even an objective injury arising from malpractice cannot support a cause of action under 42 U.S.C. §1983. Negligent medical treatment, even if shown to have occurred, is not a violation of constitutionally protected rights. Estelle v. Gamble, supra; Johnson v. Quinones, 145 F. 3d 164 (4th Cir. 1998).

Plaintiff has not claimed deliberate indifference but rather he alleges negligence and gross or willful negligence. He acknowledges that his symptoms were reviewed by the KCI medical staff. Liberally construing the Complaint, a court might discern a claim of incorrect diagnosis or medical malpractice as discussed above. Assuming that Plaintiff's allegations are true, his feeling of frustration is to some extent understandable. Nevertheless, Plaintiff's Complaint is subject to summary dismissal, in light of court decisions across more than two decades establishing the principle that these types of complaints are not of a constitutional character, especially in the absence of a "sufficiently culpable state of mind" on the part of defendants. They cannot support an action under 42 U.S.C. § 1983. Wilson, supra; Johnson v. Quinones, supra.

Ultimately, Plaintiff's claim must be pursued in the state courts of South Carolina as an action to recover damages for negligence and medical malpractice. If Plaintiff believes that the

Defendants caused him damages while acting as agents of the state government, he may also pursue available remedies under the South Carolina Tort Claims Act, S.C. Code Annotated §15-78-10 through § 15-78-200. On the facts alleged, however, he cannot recover damages in an action brought under 42 U.S.C. §1983.

### §1915 SCREENING

Under 28 U.S.C. § 1915 a District Court may dismiss a pleading by an indigent and/or *pro se* litigant upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25 (1992). Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995). The court may dismiss a claim as "factually frivolous" under §1915(e) if the facts alleged are clearly baseless. Denton v. Hernandez, supra. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id.

### RECOMMENDATION

The Defendants should not be required to answer this Complaint at this time. It is therefore recommended that the within Complaint be dismissed without prejudice and without issuance or service of process. Plaintiff's attention is directed to the Notice on the following page.

May 23, 2005
Charleston, South Carolina

George C. Kosko
United States Magistrate Judge

5

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
